UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

DANIEL L. PELAK,

              Plaintiff,                            Case No.  1:16-CV-198

v.

                                             HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant,

————————————————————————/

## OPINION

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Daniel Pelak seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

### STANDARD OF REVIEW

      The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was sixty-six years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.121, 249.) He graduated college, obtained a certificate in gemology, and was previously employed as a retail store owner. (PageID.147–148, 153.) Plaintiff applied for benefits on December 2, 2011, alleging that he had been disabled since November 1, 2011, due to an inability to stand, walk, or lift; back pain; injuries due to a 2002 motorcycle accident; rotator cuff surgery on his right shoulder; tumor removal from his ribs in 1998; skin cancer, now in remission; and ongoing pain due to his conditions. (PageID.249, 379–385.) Plaintiff's application was denied on June 14, 2012, after which time Plaintiff requested a hearing before an ALJ. (PageID.284–289.)

2

On April 23, 2013, Plaintiff appeared with his counsel for an administrative hearing before ALJ James Prothro. (PageID.193–244.) On August 16, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.261–278.) On January 2, 2014, however, the Appeals Council remanded the case for further proceedings and a reevaluation of Plaintiff's past relevant work. (PageID.279–282.) Accordingly, ALJ Prothro conducted a second hearing on May 1, 2014, at which Plaintiff, a vocational expert (VE), and a medical expert, testified. (PageID.141–191.) On May 16, 2014, ALJ Prothro issued his second decision, again finding Plaintiff was not disabled. (PageID.121–140.) On January 29, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.19–24.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on June 30, 2013. (PageID.124, 249). Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at

---

[1] 1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.    An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

any point in the review, no further finding is required.  *See* 20 C.F.R. § 404.1520(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*

In his second decision, ALJ Prothro determined that Plaintiff's claim failed at the fourth step of the evaluation.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date and the date last insured. (PageID.126.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) status post-surgery of the right shoulder for a labrum tear and clavicle resection; (2) chronic back pain; (3) right hip bursitis; (4) osteoarthritis of both knees; (5) status post right shoulder superior labral anterior-posterior (SLAP) surgery; (6) gastroesophageal reflux disease (GERD); and (7) 1985 benign tumor on ribs.  (PageID.126–127.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments.  (PageID.128–129.)  At the fourth step, the ALJ determined Plaintiff retained the

---

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

RFC based on all the impairments to perform sedentary work as defined in 20 CFR 404.1567(a). (PageID.129.)  Continuing with the fourth step, the ALJ determined that Plaintiff was able to perform his past relevant work as a retail store owner as it was actually performed.  (PageID.135.)  Having made his determination at step four, the ALJ completed his analysis and entered a decision finding that Plaintiff was not under a disability at any time from November 1, 2011 through June 30, 2013, Plaintiff's date last insured. (PageID.135.)

### DISCUSSION

Plaintiff raised a number of claims.  (PageID.886.)  The Court will address them in the order they were raised during the sequential evaluation.

### 1. Plaintiff Has Not Demonstrated the ALJ Erred in Considering the Medical Expert's Opinion.

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled.  Plaintiff asserts that he is entitled to relief because the ALJ erred in rejecting the opinion of Dr. Anthony Francis, a non-examining medical expert who testified at the hearing that Plaintiff meets the requirements of Listing 1.02A. (PageID.888.)

Section 1.02A of the Listing of Impairments provides:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affective joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affective joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (e.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

5

20 C.F.R., Pt. 404. Subpt. P, App. 1 § 1.02.  The regulations further define an inability to ambulate as: "an extreme limitation of the ability to walk" caused by "an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at § 1.00(B)(2)(b).  Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*  The ALJ rejected Dr. Francis' opinion, concluding that the record did not support a conclusion that Plaintiff was unable to ambulate effectively.  (PageID.128–129.)

Although the ALJ must "consider opinions from medical sources on issues such as whether [the claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . . the final responsibility for these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2).  The ALJ was not required to give Dr. Francis' opinions any special significance. *See Saucier v. Comm'r of Soc. Sec.*, 552 F. App'x 926, 928 (11th Cir. 2014); *Lowry v. Astrue*, 474 F. App'x 801, 804–05 (2d Cir. 2012); *Russell v. Astrue*, 356 F. App'x 199, 203 (10th Cir. 2009); *see also Vardon v. Colvin*, No. 5:13–cv–2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23, 2015) ("The issue of whether a claimant meets the requirements of a Listing, like the ultimate issue of disability, is not a medical determination but rather a dispositive administrative finding reserved to the Commissioner." (citing 20 C.F.R. § 416.927(e)); *Kepke v. Comm'r of Soc. Sec.*, No. 13–13944, 2015 WL 348747, *7 (E.D. Mich. Jan.23, 2015) ("Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ

6

'will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner . . .' [such as] whether an impairment meets or equals a Listing[.]" (quoting 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)).

  The ALJ considered the opinion of Dr. Francis, but nonetheless concluded Plaintiff failed to demonstrate that he met the requirements of Listing 1.02A. The ALJ provided, in some detail, several reasons for this finding. (PageID.128–129.) Specifically, the ALJ noted that the records relied on by Dr. Francis did not support the severity of his limitations; that Plaintiff had testified he received no treatment for his knees; and that Plaintiff demonstrated an ability to walk several hundred feet unassisted. (PageID.128–129.) Plaintiff provides meaningful argument only on the second reason provided by the ALJ. He argues that, notwithstanding his testimony, there are several medical records which document his complaints and treatment for knee pain. (PageID.889.) These records, however, were thoroughly discussed by the ALJ. (PageID.131–132.) More importantly, they do nothing to detract from the ALJ's ultimate conclusion that Plaintiff did not have an inability to ambulate effectively.

  The records cited by Plaintiff show that on August 20, 2012, Plaintiff complained of increased knee pain, but there were no concerns with walking or getting up. He had a normal gait upon examination. (PageID.590, 592.) On February 13, 2013, Plaintiff fell over a step directly onto his knee. X-rays found no acute evidence of dislocation or fracture, and conservative treatment was recommended. (PageID.603–604.) At a follow up visit, Plaintiff continued to complain of knee pain, and physical therapy was discussed. (PageID.610.) Plaintiff began therapy the following month. After his forth visit, he reported he was "really impressed that [his] pain seems to be really really slight lately. I was beginning to wonder if I should even come back for more therapy."

7

(PageID.655.)  At his fifth and last therapy visit he reported his current functional level was one hundred percent.  (PageID.664.)  On August 27, 2013, however, Plaintiff reported he had recently been on a cruise and noticed more joint pain.  He complained of pain in his knees, as well as his back, chest, and shoulder.  He took Aleve for pain relief.  (PageID.737.)  On examination there was no atrophy or deformity, and he had a normal gait.  (PageID.738.)  Plaintiff again complained of right knee pain on December 9, 2013.  An examination found some typical bony arthritic changes, but he had full range of motion and muscle strength.  (PageID.765.)  These records do nothing to satisfy the Listing's requirements of an inability to ambulate effectively.

Though not an issue raised by Plaintiff, the Commissioner concedes the ALJ misconstrued a treatment record when he stated Plaintiff could ambulate five hundred feet without an assistive device. (PageID.903.)  The record at issue actually notes that Plaintiff required the use of a cane to do so.  (PageID.796.)  The Commissioner argues that any error here is harmless, and the Court agrees.  As an initial matter, even an accurate description of the note would still have supported the ALJ's ultimate conclusion that Plaintiff did not meet the listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1  § 1.00 (B)(2)(b)(1) ("Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities.") (emphasis added).  There is no indication from the note that Plaintiff was limited in the functioning of both his upper extremities.  Moreover, Plaintiff testified his use of a cane was relatively new, and he had been using it only for the last six months–a period beginning after his date last insured. (PageID.175.)  Other records show that prior to his date last insured Plaintiff  could walk a few hundred feet without stopping.  (PageID.443.)  He reported no problems with his personal care.

(PageID.439.) Plaintiff used a snow blower, though he stated it "kill[ed]" him. (PageID.440.) He could go out to dinner two to three times a week and attend church meetings. (PageID.442.) On January 23, 2013, he stated he could not walk any distance without pain. (PageID.469.) But he still had no problems with his personal care. (PageID.470.) He went out for dinner once a week. And attended a weekly religious study group. (PageID.473.) On a third function report, dated after his date last insured, he stated he could not walk any distance, but still reported no problem with his personal care. (PageID.495.) He still went out for dinner and attended religious studies, albeit less frequently. (PageID.498.) He was still able to walk a few hundred feet with a cane without needing to stop and rest. (PageID.499.) Such activities–limited as they may be–are inconsistent with the regulation's requirements for an inability to ambulate effectively.

In sum, substantial evidence supports the ALJ's conclusion that Plaintiff does not satisfy Listing 1.02A. The Court does not doubt that Plaintiff's impairments have limited him to a great extent, however the ALJ correctly noted that such limitations do not satisfy all the elements of any listing. This claim of error is rejected.

## 2. Plaintiff Has Waived Any Argument Regarding His Shoulder Impairment.

Plaintiff next claims there was a "complete failure" on the part of the ALJ "to discuss the limitations caused by Plaintiff's shoulder impairment." (PageID.889.) He further argues the ALJ "dismissed" his shoulder impairment in his RFC discussion despite finding it to be a severe impairment. (PageID.890.) Plaintiff did not raise these arguments in his statement of errors. This constitutes a violation of the Court's Notice of May 9, 2016. (PageID.865.) Counsel was advised in that Notice that "[t]he initial brief . . . must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal

or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue."
(PageID.865.) Plaintiff has accordingly waived these arguments. *See also Nichols v. Comm'r of
Soc. Sec.*, No. 1:12–cv–995, 2014 WL 4259445, at * 9 (W.D. Mich. Aug. 28, 2014) (collecting
cases).

Even if Plaintiff had not waived these arguments, his claim regarding his shoulder
impairments would not succeed. Contrary to Plaintiff's assertion, the ALJ provided a thorough
discussion of Plaintiff's shoulder impairment when he determined Plaintiff's RFC. (PageID.130.)
To the extent that Plaintiff claims the ALJ's step two determination mandated certain limitations
later in the evaluation, he is mistaken. Whether a claimant has a "severe impairment" is determined
at step two of the sequential evaluation, and defined as an impairment or combination of
impairments "which significantly limits your physical or mental ability to do basic work activities."
20 C.F.R. § 404.1520(c). A claimant's RFC is determined at step four of the sequential evaluation.
*See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). RFC is a medical assessment
of what an individual can do in a work setting in spite of functional limitations and environmental
restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC
is defined as "the maximum degree to which the individual retains the capacity for sustained
performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20
C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d 524, 530 (6th Cir. 1992). "A
claimant's severe impairment may or may not affect his or her functional capacity to do work."
*Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (quoting *Yang v. Comm'r
of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). This is
because "[t]he regulations recognize that individuals who have the same severe impairment may

have different RFCs depending on their other impairments, pain, and other symptoms." *Id.* (citing 20 C.F.R. § 404.1545(e)); *see, e.g.*, *West v. Colvin*, No. 5:14–69–KKC, 2014 WL 7177925 at *4 (E.D. Ky. Dec. 6, 2014) ("[t]he ALJ is not required to incorporate all 'severe impairments' in her RFC assessment").  In formulating the RFC, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, at 547–48 (6th Cir. 2002) (citations and quotation marks omitted).

The ALJ's extensive discussion of Plaintiff's shoulder impairment satisfies the discussion requirements.  The ALJ began by noting a September 2009 office visit after Plaintiff had undergone surgery on his shoulder.  (PageID.130.)  Plaintiff stated he experienced pain relief, but still complained of focal pain.  On examination, however, he had nearly full active motion of the shoulder, there was full rotator cuff strength with some mild tenderness.  (PageID.513.)  At an April 30, 2012, consultative examination, Plaintiff had some limitations in the abduction, external rotation, and forward elevation of his right shoulder.  (PageID.556.)  However, he had full motor strength in all his upper and lower extremities, and intact sensory function.  (PageID.557.)  The ALJ discussed these records and more, and assigned Plaintiff a RFC of sedentary work, which involves lifting no more than ten pounds at a time, and only occasional "lifting or carrying [of] articles like docket files, ledgers, and small tools."  20 CFR § 404.1567(a).  Plaintiff has not demonstrated his shoulder impairments impose any limitations beyond those found by the ALJ.  Accordingly, this argument fails both because it was waived and it is without merit.

3.      **The ALJ Did Not Violate the Treating Physician Rule.**

On February 11, 2014, Ms. Barbara Rounds, an occupational therapist, conducted an evaluation of Plaintiff's functional capabilities.  (PageID.793–797.)  The therapist's report consists of a summary of Plaintiff's medical history, the results of a physical examination, and the results of a functional evaluation.  Based on her observation of Plaintiff during these tests, and her review of the available record, Ms. Rounds completed an RFC report regarding Plaintiff's functional abilities. (PageID.798–801.)  This report concluded Plaintiff was impaired to a greater extent than that found by the ALJ.  For example, Ms. Rounds indicated that Plaintiff could only sit for thirty minutes at any one time, and only sit for up to four hours of an eight hour workday total.  (PageID.798.)  Plaintiff would also need to shift positions at will, take unscheduled breaks, and elevate his legs when sitting for prolonged periods.  (PageID.798.)  Plaintiff could never carry even five pound weights. PageID.799.)  Plaintiff also could be expected to miss about three days of work each month. (PageID.800.)  All this led Ms. Rounds to conclude that Plaintiff did not appear to be able to perform substantial gainful activity.  (PageID.801.) On March 17, 2014, Dr. Lance Owens, Plaintiff's treating physician, indicated he agreed with Ms. Rounds' opinion.  (PageID.806.)  The ALJ considered both Ms. Rounds' opinion and Dr. Owens' agreement with Ms Rounds.  The ALJ assigned Dr. Owens' opinion "some weight," stating he agreed Plaintiff could only perform sedentary work, but disagreed Plaintiff was limited any further.  (PageID.133.)  Plaintiff argues, however, the ALJ "completely failed to give appropriate deference to the treating source opinion of Dr. Owens."  (PageID.888.) It appears Plaintiff argues the ALJ violated the treating physician doctrine.  (PageID.888–889.)

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess

significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. Owens qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with

other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

      The Commissioner argues Plaintiff's claim regarding Dr. Owens is irrelevant. (PageID.904.) The Commissioner notes that Ms. Rounds' opinion was dated February 11, 2014, and she had indicated that the RFC report reflected Plaintiff's limitations at the current time. (PageID.797.) Thus, the Commissioner points out, neither Ms. Rounds' opinion nor Dr. Owens' subsequent agreement with the opinion concerns the relevant period between Plaintiff's onset date and his date last insured of June 30, 2013. (PageID.904.) The Court agrees. Evidence from outside the disability insured period is "minimally probative" and is considered only to the extent that it illuminates the Plaintiff's condition during the period at issue. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The opinions here do nothing to illuminate Plaintiff's condition prior to his date last insured.

      The Court also rejects Plaintiff's contention that the ALJ's discussion of the opinion was somehow deficient or that the opinion was due more deference than it was given. This very same issue was recently examined by Magistrate Judge Kent of this district in *Laporte v. Comm'r of Soc. Sec.*, No. 1:15-CV-456, 2016 WL 5349072 (W.D. Mich. Sept. 26, 2016). In that case, as here, the plaintiff sought to "transform" an opinion from an occupational therapist into that of a treating source by submitting statements from treating physicians who indicated they agreed with the therapist's assessment. *Id.* at *5. Magistrate Judge Kent found that these statements were not opinions subject to the treating physician rule:

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

and your physical or mental restrictions." 20 C.F.R.
§§ 404.1527(a)(2) and 416.927(a)(2).

Here, the treating physicians did not offer any opinions regarding
plaintiff's condition. Rather, they were given the choice to agree or
disagree with the opinions expressed by Ms. Rounds, a third-party
who was not an acceptable medical source. To accomplish this,
plaintiff's physicians filled out a one-page Physician Review which
consisted of three questions. First, the doctor marked either "yes" or
"no" to the statement, "Have the patient's impairments lasted or can
they be expected to last at least 12 months?" Second, the doctor
placed a check-mark in response to the following statement,
"Prognosis: Based on my contact with the above-named patient, the
condition(s) addressed in this report appear to be: __ Permanent __
Temporary __ Progressive __ Stable". Third, the doctor circled the
word "agree" or "disagree" after the following statement, "On behalf
of my patient, I have reviewed the RFC report along with the
supportive documentation completed by Barbara Rounds, OTR/L and
(Circle) agree/disagree with the functional limitations as identified."
*See* Physician Reviews at PageID.854, 856, 858. The form also
provided two spaces for the doctor to address plaintiff's condition.
One space allowed the doctor to "Identify clinical and diagnostic
findings that support the recommended restrictions and/or affect the
patient's ability to work," and the other space allowed the doctor to
include "Comments/Modifications". *Id.*

*Id.* at *6. Magistrate Judge Kent found the ALJ properly considered the opinions:

ALJs are not bound by conclusory statements of doctors, particularly
where they appear on "check-box forms" and are unsupported by
explanations citing detailed objective criteria and documentation.
"Many courts have cast doubt on the usefulness of these forms and
agree that administrative law judges may properly give little weight
to a treating physician's check-off form of functional limitations that
did not cite clinical test results, observations, or other objective
findings[.]" *Ellars v. Commissioner of Social Security*, 647 Fed.
Appx 563, 566 (6th Cir. 2016) (internal quotation marks omitted). In
such cases, where the physician includes remarks on a check-off form
such as noting that the "plaintiff's impairments consisted of severe
peripheral vascular disease, coronary artery disease, COPD,
depression and anxiety," these types of cryptic remarks are not
sufficient to explain the doctor's findings. *Id.* at 566-67.

*Id.* at *7.  The Physician Review form in this case is the exact same as that found in *Laporte*. (PageID.806.)  On it, Dr. Owens merely indicated that Plaintiff's impairments were expected to last at least twelve months, that they were permanent, and that he agreed with Ms. Round's opinion. When asked to identify the supporting clinical and diagnostic findings, the doctor provided only a few illegible words regarding Plaintiff's chronic symptoms.  (PageID.806.)  The Court agrees with the well reasoned analysis conducted by Magistrate Judge Kent.  "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); *see also Ashley v. Comm'r of Soc. Sec.*, No. 1:12–cv–1287, 2014 WL 1052357, at *8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").  Here, the "rudimentary indications" on the opinion lack any accompanying support and accordingly meet the "patently deficient standard" of the Sixth Circuit.  *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)).  Accordingly, the ALJ did not err in accordingly assigning less than controlling weight to Dr. Owens' opinion.

> ### 4.    The ALJ's Determination that Plaintiff Could Return to his Past Relevant Work as it was Actually Performed is Supported by Substantial Evidence.

At step four, the ALJ determined Plaintiff could return to his past work as a retail store owner as he actually performed it.  (PageID.135.)  Plaintiff argues the ALJ "had no evidentiary support" for this conclusion.  (PageID.887.) Plaintiff notes that the VE had testified his past work fell at the "light" exertional level.  (PageID.153.)  Given his RFC for sedentary work, Plaintiff argues

there is no factual basis for the ALJ's conclusion that Plaintiff could return to this work.  (PageID.887.)

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. § 404.1565.

The ALJ was not required to adopt the VE's testimony.  Indeed, it is well established that vocational expert testimony is not required at step four of the sequential analysis. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007); *see also* 20 C.F.R. § 404.1560(b)(2). The ALJ was not bound to accept hearing testimony of any witness, including the VE. *See Banks v. Massanari*, 258 F.3d 820, 827–28 (8th Cir. 2001).

Having rejected the VE's testimony, the ALJ was not left, as Plaintiff alleges, without evidentiary support for his determination.  Instead, the ALJ noted he was crediting Plaintiff's own description of his past work.  (PageID.135.)  On February 29, 2012, Plaintiff completed a Work History Report, Form SSA-3369-BK.  He indicated that he was the President and Owner of a jewelry store.  (PageID.427.)  He wrote that in doing this work, he sat at a desk, bought gold and silver, and directed employees.  (PageID.427.)  He stated it was hard to stand to wait on customers, but he would sit for over seven hours of the day.  (PageID.427.)  The heaviest weight he lifted was ten pounds.  (PageID.427.)  The ALJ found that this work, as described by Plaintiff, did not require the

performance of work-related activities that were precluded by his RFC.  (PageID.135.)  Plaintiff

points to no authority demonstrating error on this point.  True, though not pointed out by Plaintiff,

he did testify at the first hearing that his work history report was not an accurate reflection of all the

activities he did.  (PageID.201.)  But the ALJ implicitly resolved this conflict, as he was allowed to

do, by finding the work history report more accurately reflected Plaintiff's activities.  Moreover, at

the second hearing Plaintiff answered the VE's questions regarding a typical day as follows:

> CLMT: Okay, on an average day I get there at 8:00 a.m.  I got there
> at 8:30 a.m. in the morning and I did book work from the previous
> day and sometimes I would meet customers that could not make it
> during the day.  That was between 8:30 a.m. and 10:00 a.m.  At about
> 10:00 a.m. I put out the jewelry and filled the showcase with the
> bullion and then what I did was during the day, sold jewelry.  There
> was – at that time we had a lot of it.  In fact now at the shop there's
> virtually no jewelry.  Casey's [Plaintiff's daughter] there basically
> buying scrap gold.  But yes, that.  And the other part of the day I
> would sit at the desk and type up the dealer transaction and that's
> what they call them when you buy stuff from the general public and
> photograph the people.   And then I would go to the post office and
> ship stuff and then during the day things would come into the shop
> and I would break it down and this would be bullion and jewelry.
>
> VE: And then when you were doing some of the things at the desk,
> say like you know appraising, repairing, if a customer would come in
> would you have to get up and then wait on them?
>
> CLMT: At times, yes.  Oh most definitely.
>
> VE: Most definitely.
>
> CLMT: Yes.  My daughter was there, too, but again, it's more than a
> one person operation.

(PageID.152–153.)  This description is not inconsistent with the requirements of sedentary work.

*See* 20 CFR 404.1567(a).  Accordingly, substantial evidence supports the ALJ's step four

determination that Plaintiff was able to return to his past work as it was actually performed.

**5.      Plaintiff Has Not Met His Burden For a Sentence Six Remand.**

Plaintiff submitted additional records that were not considered by the ALJ.  Among

them is a November 5, 2015, treatment note from Dr. John Keller, M.D.  (PageID.26–27.)  The note

contains the results of a MRI of Plaintiff's lumbar spine which found "generative disc disease at

L2-3 and L5-S1 where it is rather severe along with other moderate degenerative changes and lumbar

spondylosis." (PageID.27.)  The MRI also found a central disc herniation at L4-5.  Dr. Keller stated

that he would "order a CT Spect scan of [Plaintiff's] lumbar spine to evaluate [the] amount of

degenerative changes, perhaps pinpoint the level of severity and see if he is a candidate for lumbar

fusion with this test result." (PageID.27.)  Plaintiff argues for a sentence six remand for further

consideration of this note.

This Court, however, is precluded from considering the evidence in question. In *Cline*

*v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that

where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless

declines to review the ALJ's determination, the district court cannot consider such evidence when

adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also Bass v. McMahon*,

499 F.3d 506, 512–13 (6th Cir. 2007).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that

good cause existed for not presenting it to the ALJ, the Court can remand the case for further

proceedings, during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy

the materiality requirement, Plaintiff must show that there exists a reasonable probability that the

Commissioner would have reached a different result if presented with the new evidence. *Sizemore*

*v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  Plaintiff bears the burden

of making these showings. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th

Cir. 2006).  Plaintiff argues the "ALJ openly questioned Plaintiff's credibility because a 2012 back

x-ray did not reveal much pathology" and that the note "supports the credibility of Plaintiff and of

[his] treating physicians." (PageID.890.)  This falls far short of satisfying his burden for a remand.

Plaintiff does nothing, for example, to demonstrate good cause.  "The mere fact that evidence was

not in existence at the time of the ALJ's decision" does not satisfy the good cause standard.  The

Sixth Circuit "takes 'a harder line on the good cause test' with respect to timing and thus requires

that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing.'" *Courter*

*v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012) (quoting *Oliver v. Sec'y of Health &*

*Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).  To the extent Plaintiff argues this evidence is

material, the Court disagrees.  This is a DIB claim.  As such, Plaintiff was required to demonstrate

that he became disabled prior to the expiration of his insured status.  *See* 42 U.S.C. § 423; *Moon*, 923

F.2d at 1182.  The treatment note was dated November 5, 2015, more than two years and four

months since Plaintiff's date last insured.  (PageID.26.)  This note only reflects Plaintiff's condition

as of that date.  It says nothing about Plaintiff's condition during the relevant time period. It is

undisputed that Plaintiff's condition deteriorated after his date last insured. Accordingly, Plaintiff

has not, and cannot, satisfy his sentence six burden.

## <u>CONCLUSION</u>

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**.  A separate judgment shall issue.


Dated:      November 15, 2016            /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE